UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN TRANE,

                Plaintiff,      **DECISION AND ORDER**
                                                11-CV-4040 (WFK) (AKT)
    -*against*-

NORTHROP GRUMMAN CORPORATION,

                Defendant.
------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

Plaintiff John Trane ("Plaintiff") brings this suit against Northrop Grumman Systems Corporation ("Defendant") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. §§12101 *et seq.*, and New York State Executive Law §296, alleging (1) discrimination based on national origin and disability, and (2) retaliation for complaints of discrimination. Plaintiff alleges that he was given negative evaluations, transferred to a program intended to make it impossible to fulfill his responsibilities adequately, and eventually terminated because of Defendant's employees' animus against his Iranian national origin, their resentment at making reasonable accommodation for his disability, and in retaliation for Plaintiff's complaints regarding said discrimination. Defendant's motion for summary judgment is before this Court. As discussed below, Plaintiff has failed to provide evidence showing that Defendant's non-discriminatory and non-retaliatory reasons for negatively evaluating, transferring, and terminating Plaintiff are pretexts. Plaintiff has also failed to show that discrimination was a motivating factor in Defendant's termination of his employment. For these reasons and others explained below, Defendant's motion for summary judgment is GRANTED.

## FACTUAL AND PROCEDURAL HISTORY

### I. Facts

The events recounted below are undisputed or described in the light most favorable to Plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

On November 17, 2008, Plaintiff began his employment with Defendant as a Level 4 Reliability Electrical Engineer. Dkt. 31 (Affidavit of Jason D. Burns in Support of Defendant's

—1—

Motion for Summary Judgment) ("Burns Aff."), Ex. 13 (Defendant's Records Data concerning Plaintiff); Dkt. 1 ("Complaint") at ¶15. Upon hiring Plaintiff, Wayne Anstey ("Anstey") told Plaintiff that Stanley Murn ("Murn") would be Plaintiff's manager and that Plaintiff would be working on the U.S. Navy EA-6B aircraft, of which Anstey was the Functional Manager. Dkt. 34 ("Trane Decl."), Ex. 6 (Deposition of John Trane Part I) ("Trane I") at 40; Dkt. 24, (Memorandum of Law in Support of Motion for Summary Judgment) ("SJ Motion") at 6. Within the first few weeks of Plaintiff's employment with Defendant—that is, in November or December of 2008—Murn (the Lead Engineer on the EA-6B aircraft project, *see* SJ Motion at 6) inquired about Plaintiff's accent and questioned his national origin in the presence of another employee, Frank Perazzo. Plaintiff responded that he was of Iranian descent. Trane I at 52-55. After this incident, Perazzo talked about Plaintiff's Iranian descent on multiple occasions. Trane I at 61. On a separate occasion at an unspecified time, Defendants' employees Thomas Hanft ("Hanft") and Michael Jordan ("Jordan") questioned Plaintiff about the origin of his last name and his national origin, to which Plaintiff again responded that he was of Iranian descent. Trane I at 83-85. Apart from the above incidents, Plaintiff does not allege any references or discussions, derogatory or neutral, of his national origin while he was in Defendant's employ. Trane I at 85-87.

On December 31, 2008, Plaintiff received an evaluation of his work performance to date, which was graded on a scale of 1 ("needs improvement") to 4 ("outstanding"). Plaintiff received a performance grade of 2 ("meets performance requirements"). Burns Aff. Ex. 19 (Plaintiff's 2008 performance evaluation). However, in or around February 2009, Plaintiff began to have conflicts with co-workers and managers. Murn expressed concerns about Plaintiff sending out emails to improperly broad distribution lists, about Plaintiff leaving work early, and about the inadequacy of Plaintiff's work. Dkt. 26 ("Murn Decl.") at ¶¶ 9-17; Burns Aff. Ex. 18 (Notes

prepared by Wayne Anstey entitled "Personnel Discussions – John Trane level 4 R&M Manager) at 1. After these complaints, Anstey spoke with Timothy Grevstad from Human Resources and Rich Leyble (Plaintiff's immediate supervisor) and decided to speak with Plaintiff about Plaintiff's performance. Burns Aff. Ex. 18 at 1. Before speaking to Plaintiff, Anstey spoke with Frank Perazzo and asked for his opinion of Plaintiff's work. Perazzo said Plaintiff was seldom at his desk after 4:00 p.m., could be arrogant with co-workers and suppliers, and was a satisfactory but not outstanding engineer. *Id.* at 2. After these discussions, Anstey did in fact speak with Plaintiff in February 2009 regarding his performance. Trane I at 145-147.

In April 2009, Plaintiff had a disagreement with Jordan via email in which Jordan claimed that Plaintiff's email contained a "misrepresentation." Hanft responded to the emails stating that it was more of a "miscommunication" and that both Plaintiff and Jordan were correct. Trane Decl., Ex. 2 (Email chain between John Trane and various employees of Defendant). Also in April 2009, Hanft asked Murn to review Plaintiff's emails because Hanft had concerns about the distribution list, about Plaintiff's unclear conclusions, and about Plaintiff's failure to copy Murn. Burns Aff., Ex. 20 (Email string dated April 30, 2009); Burns Aff., Ex. 22 (Email dated April 30, 2009). Murn met with Plaintiff to discuss those concerns and reported to Grevstad and Anstey that Plaintiff responded belligerently. Burns Aff. Ex. 22. On or about May 22, 2009, Plaintiff and Anstey had a subsequent meeting in which the subject of Plaintiff being transferred to another program was raised. Plaintiff refused. Burns Aff. Ex. 18 at 5-6; Dkt. 32 (Opposition Memorandum to Motion for Summary Judgment) ("Opp. Memo") at 4-5.

In June 2009, Plaintiff was injured in a car accident and did not return to work until August 2009, at which point he used a walker and was only medically permitted to work ten to sixteen hours per week. Opp. Memo at 5-6. At some unspecified point following Plaintiff's return to work, he entered a conference room with his walker; Hanft and Joel Silber ("Silber"),

another employee, then began to laugh. Opp. Memo at 6. After his return to work, Plaintiff was transferred to a new program to accommodate his need for reduced hours. SJ Motion at 3-4.

In January 2010, Plaintiff received a midyear evaluation rating for 2009 of 1 ("needs improvement"). Burns Aff., Ex. 29 (Plaintiff's mid-year 2009 performance evaluation). Plaintiff responded by sending a letter to Michael Riley ("Riley"), his new Functional Manager, calling Jordan (who had prepared the evaluation) a liar, rude, and unprofessional. Burns Aff., Ex. 17 (Defendant's internal Human Resources investigation file concerning Plaintiff); Burns Aff., Ex. 29. Plaintiff also stated that Jordan was extremely curious about Plaintiff's last name and its origin, and that Hanft and another person (identified in Plaintiff's opposition papers as Silber) had laughed at Plaintiff's use of a walker. Burns Aff., Ex. 17. On March 25, 2010, Riley and Stephen Maniscalco ("Maniscalco") (the Reliability and Maintanability ("R&M") Group Manager) met with Plaintiff to give him his full-year review for 2009. Dkt. 28, ("Riley Decl.") at ¶18. Plaintiff again received a rating of 1. Riley Decl. at ¶19; Burns Aff. Ex. 30 (Plaintiff's final 2009 performance evaluation). On or about March 26, 2010, Plaintiff filed Equal Employment Opportunity Commission charges alleging discrimination based on national origin and retaliation. Complaint at ¶4. On April 19, 2010, Riley and Maniscalco gave Plaintiff an official Warning Letter and a Corrective Action Plan, which included goals and deadlines crafted with Plaintiff's input. Riley Decl. ¶¶21-23; Burns Aff., Ex. 31 (Warning Letter to Plaintiff dated April 19, 2010); Burns Aff. Ex. 32 (Plaintiff's Corrective Action Plan dated April 19, 2010).

In August 2010, Plaintiff was given a midyear evaluation for 2010 with a rating of 1. Burns Aff., Ex. 38 (Plaintiff's draft mid-year 2010 performance evaluation); Burns Aff., Ex. 39 (Plaintiff's mid-year 2010 evaluation). In September 2010, Defendant terminated Plaintiff's employment. Complaint at ¶63.

## II. Procedural History

Plaintiff filed his Complaint on August 22, 2011. He alleges four causes of action based on discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. §§12101 *et seq.*, and New York State Executive Law §296. Complaint at ¶75-84. Plaintiff initially made an "aider and abettor" claim under New York State Executive Law §296, but has since withdrawn it. *See* Complaint at ¶¶ 83-84; Opp. Memo at 1.

On March 22, 2013, Defendant filed a motion for summary judgment, Plaintiff filed a memorandum in opposition, and Defendant filed a reply to Plaintiff's memorandum. *See* SJ Motion; Opp. Memo; Dkt. 35 (Defendant's Reply Memorandum of Law In Further Support of its Motion for Summary Judgment) ("Reply").

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must show absence of a genuine issue for trial by citation to materials in the record, including depositions, affidavits, declarations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Affidavits and declarations, whether supporting or opposing a summary judgment motion, "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Patterson v. Cnty of Oneida, New York*, 375 F.3d 206, 219 (2d Cir. 2004).

"In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw

all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to perform "the threshold inquiry of whether there is the need for a trial[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). The district court reviews the movant's support for its claim that the record "could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1). The non-movant must come forward with "specific facts showing that there is a genuine issue for trial." *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161 (E.D.N.Y. 2009) (Wexler, J.) (quoting *Matsushita*, 475 U.S. at 586). "The mere existence of a scintilla of evidence" in support of the non-movant will be insufficient to defeat a summary judgment motion. *Anderson*, 477 U.S. at 252. Rather, the non-moving party must make a showing sufficient to establish the existence of each element constituting its case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) ("[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). Conclusory statements, devoid of specifics, are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

Summary judgment is a "drastic" measure that poses particular problems in the context of discrimination, where an employer's intent is at issue and explicit documentation of discriminatory intent is rarely discovered. *Gallo v. Prudential Residential Serv.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nevertheless, "[i]t is now beyond cavil that summary judgment may be

appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 465 (2d Cir. 2001).

## II. Discrimination under the Title VII of the Civil Rights Act of 1964 and New York State Executive Law §296.

The Court reviews discrimination claims under Title VII of the Civil Rights Act and under New York Executive Law §296 identically. *Hyek v. Field Support Servs., Inc.*, 461 F. App'x 59, 60 (2d Cir. 2012). Such claims generally fall under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803-805 (1973). *See also Lam v. Sephora USA Inc.*, 488 F. App'x 487, 489 (2d. Cir. 2012); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *Meiri v. Dacon*, 759 F.2d 989, 994-995 (2d Cir. 1985). Under this framework, a plaintiff must make a *prima facie* showing of discrimination by showing (1) that he belonged to a protected class; (2) that he was qualified for the position he occupied; (3) that he was subject to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. *Meiri*, 759 F.2d at 995-996. The burden of making a *prima facie* showing is a light one. *Id.* at 996 n.10.

After the plaintiff makes a *prima facie* case, the burden shifts to the defendant to show a non-discriminatory reason for the plaintiff's termination. If the defendant successfully makes such a showing, then the plaintiff has the burden of showing that the defendant's non-discriminatory reasons were pretexts for discrimination. *Lam*, 488 F. App'x at 1 (citing *Patterson*, 375 F.3d 206 (2d Cir. 2004)). Conclusory allegations of discrimination are insufficient to show that a defendant's non-discriminatory reasons are pretexts and avoid summary judgment. *Meiri*, 759 F.2d at 998; *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)).

However, if the plaintiff alleges that the defendant terminated his employment for a combination of permissible and impermissible reasons, then the Court applies the "mixed-motive" framework established in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-245 (1989) (superseded on other grounds). In a *Price Waterhouse* inquiry, Plaintiff must make a threshold showing that his national origin was a "motivating" or "substantial" factor in Defendant's employment decision. *Lam*, 488 F. App'x at 491 (citing *Raskin v. Wyatt*, 125 F.3d 55, 60 (2d Cir. 1997). Plaintiff's initial burden in a mixed-motive inquiry is heavier than his initial burden of making a *prima facie* showing of discrimination under the *McDonnell Douglas* framework. *See de la Cruz v. N.Y.C. Human Res. Admin. Dept. of Soc. Servs.*, 82 F.3d 16, 23 (2d Cir. 1996); *Raskin*, 125 F.3d at 60-61 (citing *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992)) (the plaintiff must initially present "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude."). If the plaintiff meets this heavier initial burden, the defendant must then show that it would have taken the same action absent the impermissible factor. *Lam*, 488 F. App'x at 2; *see also Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119-120 (2d Cir. 1997).

### III. Discrimination under the Americans with Disabilities Act and New York State Executive Law §296.

To establish a *prima facie* case of unlawful discrimination on the basis of disability under the Americans with Disabilities Act ("ADA"), a plaintiff must show that (1) the defendant is an employer subject to the ADA; (2) the plaintiff was disabled within the meaning of the ADA or perceived to be so by his employer; (3) the plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability. *Brady v. Wal-Mart Stores, Inc.*,

531 F.3d 127, 132 (2d Cir. 2008); *Lewis v. Livingston Cnty. Ctr. for Nursing & Rehabilitation*, 30 F. Supp. 3d 196, 208 (W.D.N.Y. 2014) (Wolford, J.). The Court reviews New York State Executive Law §296 claims under the same standards as ADA claims. *Gill v. Maul*, 876 N.Y.S.2d 751, 753 (3d Dep't 2009). Furthermore, the Court reviews ADA claims under the same burden-shifting framework established for Title VII cases in *McDonnell Douglas Corp.*, 411 U.S. at 802-805: once the plaintiff makes a *prima facie* case for unlawful disability discrimination, the defendant must provide a non-discriminatory reason for the adverse event, upon which showing the plaintiff must show that the purported non-discriminatory reasons are pretextual. *Klaper v. Cypress Hills Cemetery*, 10-CV-1811, 2014 WL 1343449, at *5 (E.D.N.Y. Mar. 31, 2014) (Garaufis, J.) (citing *McBride v. Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)); *see also Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

The Second Circuit has applied the *Price Waterhouse* "mixed-motive" framework to ADA claims in the past. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 336 (2d Cir. 2006). However, the Supreme Court's subsequent holding that the "mixed-motive" framework does not apply to discrimination claims under the Age Discrimination in Employment Act may mean that the Second Circuit precedent applying the "mixed-motive" framework to ADA claims is no longer valid. *See Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 180 (2009); *see also Wesley-Dixon v. Warwick Valley Cent. School Dist.*, 586 F. App'x 739, 745 n.3 (2d Cir. 2014) (citing *Gross*, 557 U.S. 167; *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012)). The Court will not decide that question here: as discussed below, Plaintiff cannot avoid summary judgment under either framework.

## IV. Retaliation under the Title VII Civil Rights Act, the Americans with Disabilities Act, and New York State Executive Law §296.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) he was engaged in an activity protected under Title VII; (2) the defendant was aware of his participation in the protected activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the defendant. *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (citing *Cosgrove v. Sears, Roebuck & Co.* 9 F.3d 1033, 1039 (2d Cir. 1993)). As in the case of a discrimination claim under Title VII or the ADA, once the plaintiff establishes a *prima facie* case, the defendant must provide a legitimate, non-retaliatory reason for the adverse action. After that, the plaintiff must show that the reason is pretextual. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844-846 (2d Cir. 2013); *Univ. of Tex. Sw. Med. Ctr. v Nassar*, 133 S.Ct. 2517, 2534 (2013) (holding that the "mixed-motive" framework does not apply to retaliation cases under Title VII). The Court analyzes ADA retaliation claims under the same standard as Title VII retaliation claims. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Furthermore, New York state law claims for retaliation for protected activity related to national origin and disability discrimination are analyzed under the same standard as Title VII and ADA retaliation claims. *See Rodas v. Town of Farmington*, 918 F. Supp.2d 183, 192 (W.D.N.Y. 2013) (Telesca, J.) (*aff'd on appeal*, 567 F. App'x 24 (2d Cir. 2014)); *Treglia*, 313 F.3d at 719.

# ANALYSIS

## I. National Origin and Disability Discrimination Claims

Plaintiff asserts that the *McDonnell Douglas* burden-shifting framework applies to his national origin discrimination claims. Opp. Memo. 11-12. He also asserts that the more lenient mixed-motive framework applies. Opp. Memo. 12-13. Regardless of the framework used, Plaintiff fails to demonstrate that a rational trier of fact could find that Defendant unlawfully discriminated against him based either on national origin or on disability. The Court first analyzes Plaintiff's national origin and disability claims under the *McDonnell Douglas* framework. Title VII claims for national origin discrimination and ADA claims for disability discriminations have differing standards for establishing a *prima facie* case. However, the second and third steps of the *McDonnell Douglas* burden-shifting framework—the defendant's burden to show non-discriminatory reasons and the plaintiff's subsequent burden to show that those reasons are pretextual—are identical for Title VII and ADA claims. *See, e.g.*, *Meiri*, 759 F.2d at 994-995; *Klaper*, 2014 WL 1343449 at *5. In this case, since the Court (as discussed below) assumes *arguendo* that Plaintiff has established a *prima facie* case for both national origin and disability discrimination, the Court analyzes the second and third *McDonnell Douglas* steps of the national origin and disability claims together.

After reviewing Plaintiff's claims under *McDonnell Douglas*, the Court analyzes those claims under the *Price Waterhouse* mixed-motive framework.

**A. Plaintiff fails to show that Defendant's non-discriminatory reasons for any of the adverse employment actions are pretexts under the *McDonnell Douglas* framework.**

Plaintiff has the burden of establishing a *prima facie* case of discrimination. This burden is minimal. *Meiri*, 759 F.2d at 996 n.10. As Defendant has produced evidence of non-discriminatory reasons that Plaintiff cannot show are pretextual, the Court will assume without deciding that Plaintiff has successfully established a *prima facie* case. *Plourde v. Snow*, 02-CV-5532, 2006 WL 4510754, at *11 n.9 (E.D.N.Y. June 14, 2006) (Feuerstein, J.),.

Defendant argues that Plaintiff's negative evaluations and termination were the result of Plaintiff's poor performance and behavior at work from the start of his employment, and not the result of discrimination by Defendant. In support, Defendant offers voluminous depositions, affidavits, and declarations from co-workers and supervisors attesting to Plaintiff's mediocre or unsatisfactory job performance, his combative behavior to co-workers and suppliers, and his unwillingness to accept corrections about the appropriate email distribution lists. *See, e.g.*, Dkt. 30 ("Maniscalco Decl.") at ¶¶5, 8-9, 11-18, 21-23 (describing Plaintiff's work and evaluations thereof, and management's attempts to help improve it, from November 2009 to September 2010); Riley Decl. at ¶¶5, 15-28, 31-33 (describing Plaintiff's work and evaluations thereof, and management's attempts to help improve it, from June 2009 to September 2010); Murn Decl. at ¶¶ 9-17 (stating that, according to Murn's observations, Plaintiff lacked the necessary skills for the job, did not understand the military aspects of his analysis, used email disruptively, refused to copy Murn on emails despite directives from managers to do so, and yelled and pointed his finger at Murn); Dkt. 27 ("Jordan Decl.") at ¶¶ 7-12, 16-17 (stating that Plaintiff's work from late 2008 through June 2009 was poor); Burns Aff. Ex. 2, ("Kossowsky Deposition") at 12-14, 20, 34-35, 41-43, 46-47 (stating that Plaintiff's work had significant flaws, that his response to criticism was uneven, and that the engineer who replaced him had superior technical skill); Burns Aff. Ex. 3, ("Silber Deposition") at 12-13, 17-18, 21 (stating that Plaintiff's work was technically unsound and "unacceptable"); Burns Aff. Ex. 6, (" Hanft Deposition") at 35-37 (describing disagreements with

Plaintiff over copying Murn on emails); Dkt. 36 (Reply Affidavit of Jason D. Burns in Further Support of Defendant's Motion for Summary Judgment), Ex.1 ("Jordan Deposition") at 19-21, 31, 37-38, 54-56 (stating that Plaintiff was disruptive, did not work well with others, delayed the gathering of data, and missed an important correlation between WRA7 and WRA9 failures).

Additionally, Defendant offers emails documenting complaints of Plaintiff's work performance and attempts to help him improve it. *See* Burns Aff., Ex. 20 (April 30, 2009 email from Murn criticizing Plaintiff's analysis, failure to copy Murn, and use of mass distribution lists, which Murn reviewed at Hanft's request), Ex. 23 (May 8, 2009 emails between Murn and Anstey concerning Plaintiff's trip to a supplier without notifying Murn), Ex. 25 (email from John Koch to management concerning planned meeting with Plaintiff to discuss reporting responsibilities), Ex. 33 (email from Riley regarding Plaintiff's persistent failure to add a financial goal to his Performance Management Process, a.k.a. "PMP"). Furthermore, Defendant has provided copies of detailed performance reviews, all of which (except the late 2008 review) are negative. Burns Aff., Exs. 19, 29, 30, 38, 39. Defendant further states that Plaintiff's transfer to the AEW program was a reasonable accommodation of his disability and not, as Plaintiff alleges, an attempt to set Plaintiff up to fail. Riley Decl. ¶9; Burns Aff., Ex. 27 (healthcare provider statement that Plaintiff could only work 10 hours a week).

In response to Defendant's evidence, Plaintiff offers his own disagreements with the charges of poor performance, calling them "false and unsubstantiated." Opp. Memo at 14; *see also* Burns Aff., Ex. 42 (Plaintiff's October 2010 letter to the EEOC providing his account of events). Plaintiff also suggests that the timing of the adverse events is suspicious: his 2008 review was satisfactory, and problems arose only after other employees inquired about his national origin. Opp. Memo at 14. Two months after Plaintiff's return to work after his car accident, Plaintiff was transferred to a new group; after this, he contends, he was deliberately overloaded with an

unreasonable amount of work for his reduced hours despite repeatedly informing supervisors of this fact. *Id.* at 17; *see also* Burns Aff., Ex. 42. Plaintiff has also claimed that Defendant had a financial motive to give him spurious negative reviews because Defendant could have gotten government funding for a full-time employee in Plaintiff's stead. *Id.* Furthermore, Plaintiff claimed that in his 2010 review, he received a rating of 1 ("needs improvement") on a project he had done no work on in 2010 (the "French Garmin" project) and a rating of 2 ("meets requirements") on two projects he claimed he had also done no work on; this, he implied, invalidates the review. *Id.* The reference to the French Garmin project was removed from the 2010 review on September 13, 2010. Burns Aff., Ex. 39 (Plaintiff's mid-year 2010 performance evaluation). Plaintiff also references a specific disagreement with Jordan. Opp. Memo at 5. Plaintiff notes that Hanft agreed with Plaintiff's conclusion that there was no statistical correlation between WRA7 and WRA9 failures; however, Plaintiff fails to note that Hanft also agreed with Jordan and that the statistical correlation was not the sole issue. Trane Decl., Ex.2 (April 2009 emails between Plaintiff, Jordan and Hanft); Jordan Deposition at 54-55. Plaintiff suggests that this dispute shows that Jordan was being discriminatory in his negative observations of Plaintiff's work performance.

Plaintiff's response is insufficient to permit a rational trier of fact to conclude that Defendant's non-discriminatory reasons are pretexts. Conclusory allegations of pretext and illicit motives are insufficient to defeat a summary judgment motion. *Meiri*, 759 F.2d at 998; *Delaney*, 766 F.3d at 170. As such, Plaintiff's unsupported assertions that the documented criticisms of his performance are "false and unsubstantiated" cannot defeat a summary judgment motion. Nor can his unsubstantiated assertion that Defendant set him up to fail by transferring him to a new group and giving him an unreasonable amount of work after his disability. Plaintiff points out that Defendant's employees learned of his national origin between the 2008 review and the complaints

regarding Plaintiff's performance. However, Plaintiff had been working for Defendant for less than two months at the time of the 2008 review. Burns Aff., Ex. 13 (Defendant's Records Data concerning Plaintiff), Ex. 19 (Plaintiff's 2008 performance evaluation). The fact that his review after more than six months of work was less satisfactory than his review after less than two months of work does not show that Defendant's proffered nondiscriminatory reasons are pretexts. Nor do Defendant's employees' inquiries about Plaintiff's name show that Plaintiff's subsequent negative reviews, transfer, or termination occurred for discriminatory reasons. In particular, Plaintiff's own statement that he heard nothing derogatory about people of Iranian descent while in Defendant's employ weighs against inferring that Defendant's non-discriminatory reasons are pretextual. Trane I at 86-87.

Similarly, the fact that Plaintiff was transferred to a new group after returning to work from his accident is insufficient to permit a trier of fact to find that Defendant's stated reasons for the transfer, the negative reviews, or the termination, were pretextual. Plaintiff's statement that he was deliberately overloaded with work upon his transfer for discriminatory reasons is unsupported. Indeed, Plaintiff in his deposition suggests that he is unsure of exactly when he first complained about his workload being unreasonable for his hours; there is no evidence of Plaintiff raising this complaint before he was given a warning and placed on probation in April 2010. *See, e.g.,* Trane I at 107-113; Trane Decl., Ex. 7 (Continued Deposition of Trane) ("Trane II") at 204; Burns Aff., Ex. 17 (February 1, 2010 letter of complaint from Plaintiff), Ex. 34 (Notes from probation review meeting of June 21, 2010); Trane Decl., Ex.4 (Email from John Trane on June 22, 2010); Riley Decl. ¶22. Even after his June 21, 2010 complaint (*see* Burns Aff., Ex. 34; Trane Decl., Ex. 4), when asked if the workload needed to be adjusted, Plaintiff did not respond. Burns Aff. Ex. 37(Email string dated May 17, 2010 and June 22, 28, and 29, 2010).

Finally, the existence of errors in Plaintiff's performance reviews does not support a finding that the stated reasons for the negative ratings are pretextual. Nor does Plaintiff's disagreement with Jordan, in which Hanft attempted to support both Jordan and Plaintiff, show that Jordan's criticisms of Plaintiff's performance were discriminatory. Therefore, Plaintiff fails to avoid summary judgment for the Defendant under the *McDonnell Douglas* framework.

**B. Plaintiff fails to show that discriminatory reasons were a motivating factor in adverse actions under the *Price Waterhouse* mixed-motive framework.**

Plaintiff's evidence of discriminatory motives consists of (1) his statement describing inquiries by some of Defendant's employees regarding his name in early 2009, which he concedes were not derogatory; (2) his statement describing one occasion on which Plaintiff entered a conference room with his walker and Hanft and Silber began to laugh; and (3) Plaintiff's unsupported assertions that his transfer and his negative reviews were done out of bias against his national origin or disability. *See* Opp. Memo at 3, 6-8. The individuals who inquired about Plaintiff's name or laughed at him were identified as Murn, Frank Perazzo, Hanft, Silber, and Jordan. *Id.* at 3, 6. Of those five individuals, only Jordan had any involvement in Plaintiff's negative reviews in 2009 (though not in 2010). Burns Aff., Ex. 17 (Plaintiff's February 1, 2010 letter to Michael Riley), Ex. 29 (Plaintiff's 2009 midyear performance evaluation), Ex. 30 (Plaintiff's 2009 full-year performance evaluation); Jordan Deposition at 121-122. Additionally, none of those individuals have any alleged or conceded involvement in Plaintiff's probation or termination. *See, e.g.,* Burns Aff., Ex. 42 (Plaintiff's October 25, 2010 letter to the EEOC, wherein he provides his own account of his termination and describes Riley and Maniscalco making the decisions involved); Jordan Deposition at 122-123; Murn Decl. at 20; Riley Decl. at ¶¶21, 32; Maniscalco Decl. at ¶¶12, 22.

Thus, Plaintiff fails to show that any of the decision-makers involved in his negative reviews or termination were biased against his national origin or disability. All he can provide are a few ambiguous inquiries into his name and an ambiguous incident involving two people laughing when he entered a room. Only one person involved in these incidents gave Plaintiff negative reviews in 2009, and none had any alleged or conceded input into his 2010 reviews, his probation, or his termination. This evidence is insufficient to meet the heavier initial burden, under the mixed-motive framework, to show that discriminatory reasons were a motivating or substantial factor in the employment decision. *See, e.g., Lam*, 488 F. App'x at 490 (finding that the defendant's store manager's statement that the United States "belongs to the Americans and Puerto Ricans" did not show that the store manager was biased against the Senegalese plaintiff, nor did it permit the inference that the plaintiff's termination was based on his national origin); *Raskin*, 125 F.3d at 61-63 (finding that inquiries about age from a person involved in the employment decision-making process were insufficient to establish that age discrimination was a motivating or substantial factor in employment decision). As such, Plaintiff cannot avoid summary judgment under the mixed-motive framework any more than he can under the *McDonnell Douglas* framework. The Court therefore GRANTS the Defendant's motion for summary judgment on Plaintiff's discrimination claims.

## II. Retaliation Claims

Like discrimination claims under Title VII and the ADA, retaliation claims are analyzed under the *McDonnell Douglas* three-step burden-shifting framework. *Zann Kwan*, 737 F.3d at 844-846. The mixed-motive framework does not apply to retaliation claims. *See Nassar*, 133 S.Ct. at 2534. As with Plaintiff's discrimination claims, the Court will assume without deciding that Plaintiff has established a *prima facie* case of retaliation and will move on to the question of

whether a rational trier of fact could find Defendant's proffered non-retaliatory reasons to be pretextual.

Plaintiff's argument that Defendant's non-retaliatory justifications are pretexts relies on (1) the notion that Plaintiff only received criticisms and negative reviews after an alleged (but undocumented) complaint of discrimination in early 2009, while his 2008 performance review was satisfactory, and (2) his assertion that Defendant's employees' negative comments regarding his work are false. Opp. Memo at 21-22. However, Plaintiff's 2008 review, as stated before, only covered the first few weeks of his employment with Defendant; the fact that this review was slightly more positive than the later ones, which concerned much longer periods, is not sufficient to show that Defendant's reasons for the later negative reviews are pretextual. Furthermore, temporal proximity by itself is insufficient to show that Defendant's non-retaliatory reasons are pretextual. *See, e.g., Garone v. United Parcel Servs.*, 00-CV-6722, 2001 WL 984914, at *4 (E.D.N.Y. July 12, 2001) (Glasser, J.) (citing *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 312-313 (S.D.N.Y. 2000) (Buchwald, J.)). Plaintiff's assertion that negative comments regarding his work are false is, once again, insufficient to show that Defendant's reasons are pretexts. As such, the Court GRANTS summary judgment on Plaintiff's retaliation claim.

### III. The Court Exercises Jurisdiction Over Plaintiffs' State Law Claims

When the federal claims are dismissed in an action with state law claims based on supplemental jurisdiction, the state claims should be dismissed as well. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

However, in a case where the state law claims are part of the same case or controversy as the federal claims and are analyzed identically, federal district courts will exercise their jurisdiction over the state law claims and grant summary judgment on those claims as well. *See, e.g., Matthews v. Corning*, 08-CV-6323, 2014 WL 74999457, at *20 (W.D.N.Y. Dec. 31, 2014) (Wolford, J.). This is just such a case. Therefore, the Court GRANTS the Defendant's motion for summary judgment on the Plaintiff's New York state law claims.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment, Dkt. 23, is GRANTED.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: March 9, 2015
Brooklyn, New York